**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **3:CR-22-263** |
| **HECTOR ALVAREZ,** | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Pending before the court is the defendant's motion to suppress evidence. (Doc. 26). The matter having been fully briefed and a hearing having been held, the defendant's motion will be **DENIED.**

Subsequent to an evidentiary hearing on the defendant's motion, the parties were permitted to file post-hearing briefs. The testimony at the hearing regarding the factual background of this case has been summarized by the government and, with few exceptions, not challenged by the defendant. It presents as follows:

> . . . Detective Mariano indicated that the day of the incident he had set up surveillance on a suspected stash house located at R619 Winters Avenue, Hazle Township, Pennsylvania when he noticed that the defendant's vehicle was parked in the driveway. Detective Mariano witnessed the defendant leave the residence while carrying a gray shopping bag and proceed to drive away. The Detective followed Alvarez and witnessed the defendant pull to the side of the road and discard the shopping bag into a trash can some distance from the stash house. Detective Mariano then pulled over, retrieved the bag and

immediately noticed a smell of diesel or gasoline emanating from the bag. The shopping bag also contained bags containing residence (sic) which appeared to have been used to package kilogram quantities of methamphetamine.

Detective Mariano called for assistance to locate and arrest Alvarez while he drove to Alvarez's residence – a location known to the Detective as Alvarez was a known target of drug trafficking to police. The Detective encountered Alvarez as soon as he approached [the] Alvarez residence located at 587 McKinley Street, where the defendant remained in his car. The defendant then proceeded to drive around the block before Patrolman Thomas King attempted to perform a traffic stop. Rather than bringing his vehicle to a stop, Alvarez accelerated, drove around the corner, and parked behind his residence. Alvarez then jumped out of his car and proceeded to go through or over a fence and run through his back yard.[1] Rather than chase him over or through the fence, Detective Mariano and Patrolman King proceeded on the sidewalk around the block to the front of 587 McKinley Street, where Detective Mariano's partner had secured Alvarez's arrest.

Alvarez was taken to the police barracks while Detective Mariano remained at the McKinley Street address and his partner began to photograph the location of the arrest. A number of these photographs were introduced by the Government at the hearing. While photographing the alleyway[2] where the defendant had fled between the defendant's residence and the neighboring house, police discovered a brown box inside a blue recycling bin. The

---

[1] The defendant concedes he eluded police. He argues, however, that he was never actually charged with flight to avoid apprehension, resisting arrest, or fleeing and eluding. At oral argument, counsel conceded that what the defendant was ultimately charged with is of no moment. (Doc. 52, p. 64).

[2] The government refers to the area as an "alleyway," while the defendant refers to the area as a "side yard." In either case, the area being referred to is a narrow grassy area in between the defendant's residence and his neighbor's residence.

brown box was immediately recognized as being consistent with boxes used in the trafficking of heroin and fentanyl. The recycling bin was laying on its side and up against the neighbor's house. The area of the alleyway between the residences is open to the street and used to store the recycling bin, together with other trash cans. Toward the back of the alleyway there is a fence connected to Alvarez's residence that forms an "L" shape and proceeds a few feet along the center of the alleyway toward the front of the house. There is also a stairway in the alleyway into a doorway allowing ingress to the neighbor's house toward the center – and behind the garbage cans of the neighbor's residence. There appears to be footprints in the snow along the pathway in the alleyway both toward the center of the alleyway as well as slightly to the left and right. It is noted that the various garbage cans are lined up along the structure of the neighbor's house forcing anyone walking in the area to do so toward the center or slightly on Alvarez's side of the alleyway.

After photographing the area of the incident and finding the package of fentanyl in the recycling bin Detective Mariano proceeded to police headquarters where he interviewed the defendant. Prior to leaving, however, Detective Mariano requested other officers secure both the defendant's vehicle and the stash house located on Winters Avenue. Alvarez agreed to cooperate, signing both a Miranda waiver and a waiver allowing police to search his vehicle.[3] Alvarez noted that there would be more "work," i.e., drugs in the trunk of his car.[4] Detective Mariano had the defendant's vehicle towed to a secure location and a subsequent search revealed the presence of fentanyl similarly packaged as that discarded by the defendant in the recycling bin on his neighbor's property. Detective Mariano also obtained a search warrant for R619 Winters Avenue, Hazle Township from a Pennsylvania Magistrate. Search of that stash house resulted in the seizure of additional evidence of drug trafficking including

---

[3] As discussed further below, the defendant argues that he was coerced into consenting to the search of his vehicle.

[4] The court notes here that the plaintiff further indicated that there was a lot more product located at the R619 Winters Avenue residence.

drug packaging materials and equipment and more than 25 kilograms of methamphetamine packaged similarly to the packages discovered in the shopping bag discarded by Alvarez which started the whole investigation.

(Doc. 57, pp. 2-5) (record citations omitted).

In his motion to suppress, the defendant initially argues that the offense of discarding the Walmart bag containing drug paraphernalia into the garbage was an ungraded misdemeanor. Because Detective Mariano did not possess probable cause to believe that the defendant committed a felony, the defendant argues his subsequent stop, seizure, and arrest without a warrant was in violation of his Fourth and Fourteenth Amendment rights.[5] (Doc. 37, pp. 6-7).

At the evidentiary hearing, the court questioned counsel as what authority existed to support the argument that, if a misdemeanor is committed in the presence of an officer, the officer would be required to obtain an arrest warrant before the individual could be arrested. Counsel

---

[5] While the defendant argues that he committed nothing more than a misdemeanor in discarding the bag into the garbage and dissociated himself from any illegal activity, the government argues that, given the circumstances of this case as outlined above, Detective Mariano was well within his rights to effectuate an arrest for suspicion of felony drug trafficking for which he would not have needed a warrant. Defendant does not to take issue with the fact that a warrantless arrest could have been effectuated if there was probable cause to believe his actions constituted a felony.

could present no authority at the hearing, but indicated if given an opportunity to file a supplemental brief he would "make sure there's federal law" on the issue and he would include citations to the case law in his supplemental brief. Counsel has filed his post-evidentiary hearing brief (Doc. 59) and has made no reference whatsoever to this argument. The court assumes that counsel, like the court, has uncovered no authority to support his initial argument that an officer is required to get an arrest warrant for an individual when that individual has committed a misdemeanor in the officer's presence. In fact, the case law indicates that "[a] warrantless arrest of an individual in a public place for a felony, ***or a misdemeanor committed in the officer's presence***, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Here, the defendant's only substantive argument as to probable cause is that Detective Mariano did not possess probable cause because the offense he committed was an ungraded misdemeanor and not a felony. The defendant's argument is without merit.

The defendant next argues in his motion that officers unlawfully entered the curtilage surrounding his home at 585 McKinley Street. Here, in his original brief, the defendant argues that the recycling bin from which officers removed the brown box containing fentanyl was located in his side

yard and was against his home outside of the view of the general public. He argues that the search of the recycling bin located on his private property in the side yard of his home was in violation of the Fourth Amendment and that the evidence discovered within the brown box should be suppressed. (Doc. 37, pp. 8-10). At the evidentiary hearing, counsel conceded that from the evidence presented the recycling bin at issue was, in fact, not laying against the defendant's property, but was laying against the neighbor's property. (Doc. 52, pp. 60, 63).

"[T]he Court considers curtilage - 'the area immediately surrounding and associated with the home' - to be 'part of the home itself for Fourth Amendment purposes.'" *United States v. Moye*, 2024 WL 967889, at *4-5 (M.D. Pa. Mar. 6, 2024) (citing *United States v. Brooks*, 358 F. Supp. 3d 440, 466 (W.D. Pa. 2018) (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (internal quotation marks omitted)). "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." *Id.* (citing *California v. Ciraolo*, 476 U.S. 207, 212–213 (1986)).

In *United States v. Dunn*, 480 U.S. 294 (1987), the Supreme Court set forth four factors to resolve the curtilage question:

the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*Dunn*, 480 U.S. at 301. The Court counseled that these factors represent "useful analytical tools" as opposed to a formula to be "mechanically applied." *Id*.

Before considering the *Dunn* factors, the court notes that the "side yard" to which the defendant refers is a narrow area in between the defendant's home and that of his neighbor. Exhibits entered into evidence at the hearing demonstrate the area is as described by the government and cannot substantively be challenged by the defendant. With the exception of sparce shrubbery at the front corner of the residence, the side yard area is open to the street and can be viewed and accessed from the front of the property. There is a fence connected to the defendant's residence towards the back of the area that forms an "L" shape. It proceeds a few feet down the center of the side yard toward the front of the residence separating the defendant's property from his neighbor's, but the remainder of the area is otherwise open. At the time of the search, as depicted in the exhibits, there were a number of trash receptacles, including the recycling bin at issue, which were stored against the neighbor's house. There is also a stairway in

7

the area leading to a doorway which can allow ingress or egress for the neighbor's house.

With the above description in mind, as to the first *Dunn* factor, while there certainly is a portion of this side yard which can be treated as an adjunct of the defendant's house, the court does not find that the area where the recycling bin at issue was located can be so designated. In fact, based upon the exhibits presented, and specifically the position of the recycling bin and the condition of the snowfall surrounding the bin, as well as counsel's concession at the evidentiary hearing, the bin was at all relevant times against the neighbor's property.

The defendant makes a point that the exhibits show footprints in the snow on his side of the yard. In fact, the pictures depict footprints toward the center and on both sides of the yard. It is unclear which footprints belong to the defendant, who ran through the side yard earlier, and which belong to the officers, who later conducted an investigatory sweep. However, as noted by the court at the hearing, in going through the side yard, some steps onto the defendant's side yard would have to be necessary since the garbage cans against the neighbor's property would make it nearly impossible for the officers to have walked or the defendant to have run down that half of the yard unobstructed.

To the extent it is necessary to continue on with the second *Dunn* factor, as indicated, at the time of the investigatory search, both the defendant's and the neighbor's portion of the side yard was open to view and accessible from the front of the property. On the third *Dunn* factor, there is no indication that the area at issue was being used for intimate activities of the home. Instead, from the exhibits submitted, the side yard area appears mainly utilized by the neighbor to store his garbage and recycling receptacles and possibly as a point of ingress or egress for his home, if he so chooses. And finally, as discussed, there was little to protect the passage from observation as it could easily be viewed from the front of the property.

Thus, overall, the *Dunn* factors suggest the area where the recycling bin containing the brown box was found was not within the curtilage of the defendant's home. And, in fact, the recycling bin in which the brown box was found was on the neighbor's property. The fact that officers may have stepped onto the defendant's side of the property while conducting the investigatory search does not warrant Fourth Amendment protection.[6]

---

[6] The government argues that the cardboard box inside the recycling bin was in plain view and therefore there was no violation in retrieving the box. The defendant counters that because the officers were unlawfully inside the curtilage of his home when the cardboard box was found, the plain view exception does not apply. The court has found that the cardboard box was in a bin on the neighbor's property and that the officers were not

Having found that the brown box was in the recycling bin on the neighbor's property not the defendant's and that the officers did not illegally step onto the curtilage of the defendant's property in conducting their investigatory search, the question becomes whether the defendant has standing to move to suppress the evidence found in the brown box retrieved from the recycling bin.[7] The government argues he does not and the court agrees.

"[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable."[8] *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Under the reasonable expectation of privacy test, the defendant must demonstrate "an actual or subjective expectation of privacy in the subject of the search or seizure" and

---

unlawfully in the curtilage of the defendant's home. Therefore, the defendant's argument that the plain view exception does not apply is of no moment.

[7] While the defendant argues that the government raised the issue of standing for the first time in its post-hearing brief, the government in fact raised the issue of standing in its initial brief in opposition to the defendant's motion to suppress. (Doc. 41, p. 16).

[8] While the defendant argues that the trespassory test and not reasonable expectation of privacy test applies here, the court disagrees. *See United States v. Correa*, 653 F.3d 187, 191-92 (3d Cir. 2011) (we reiterate that Fourth Amendment standing turns on legitimate expectations of privacy and not on concepts of trespass) (citations omitted).

show that "this expectation of privacy is objectively justifiable under the circumstances." *United States v. Donahue*, 764 F.3d 293, 298-99 (3d Cir. 2014). *See also United States v. Nagle*, 803 F.3d 167, 178 (3d Cir. 2015) (there is no Fourth Amendment claim for search of property unless the defendant can show "a personal connection to the place searched or to the item seized" and that both the place and item were kept private).

Here, the package at issue was located in a recycling bin on the defendant's neighbor's property. The defendant has presented no evidence to demonstrate that he had a possessory interest in his neighbor's property, or that he in any way controlled the property. Further, he has not demonstrated that he any expectation of privacy with respect to the neighbor's property, the recycling bin, or the items placed therein. Thus, the court finds that the defendant has no standing to challenge the seizure of the package from the recycling bin.

Next, the defendant argues that, after officers "unlawfully" seized him and "unlawfully" obtained the box of fentanyl, they obtained consent from him for the search of his vehicle. The defendant argues that this consent was obtained using the fruit of the poisonous tree to coerce consent from him in violation of his Fifth and Fourteenth Amendment rights. The defendant argues that this combination of unlawful procedures and

violations renders his consent and confession unlawful and both should be suppressed. The court has found that the defendant's arrest was legal and that the defendant has no standing to challenge the seizure of the evidence from the neighbor's property which was, in any event, legal. As such, the court further finds that the defendant's argument that his consent was coerced *because* it was based upon an illegal arrest and unlawfully obtained evidence is without merit and his motion to suppress will be denied on this basis.

Finally, when applying for the search warrant for R619 Winters Avenue, the defendant argues that the officers left out crucial facts and considerations that should have been included in the affidavit of probable cause and included information obtained during his "unlawful" interrogation in violation of his constitutional rights. The defendant argues that this conduct tainted the authorization from the Magisterial District Judge when he signed and reviewed the search warrant. The defendant argues that reconstructing the warrant application without the "unlawfully" obtained evidence would leave only speculation that he may have obtained or stored drugs from and at the R619 Winters Avenue residence. Because of this, the defendant argues that the evidence obtained during the search of R619

Winters Avenue should be excluded and suppressed as they were obtained in violation of the Fourth and Fourteenth Amendments.

As the record demonstrates, after his arrest, the defendant was taken to the police barracks where he was read his Miranda rights and signed a Miranda waiver. In addition, the defendant signed a waiver allowing police to search his car. The defendant was interviewed, at which time he indicated that there was a lot more product at the R619 Winters Avenue residence. As the court indicated above, there is no indication that any of this conduct was coerced by illegal or unlawful activity. Moreover, even extracting the information which the defendant argues should not have been included in the probable cause affidavit, as set forth in the government's post-evidentiary brief (Doc. 57, pp. 11-14), there was sufficient probable cause remaining to obtain a search warrant for the R619 Winters Avenue residence.

In light of the foregoing, the defendant's motion to suppress (Doc. 26) will be denied. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

**Dated: September 24, 2024**
22-263-01